IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| PIERRE YOURY, | : | CIVIL ACTION |
|       Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| EXECUTIVE TRANSPORTATION CO., et al., | : | |
| | : | |
|       Defendants. | : | No. 11-4103 |

**MEMORANDUM**

**GENE E.K. PRATTER**                                                                 **SEPTEMBER 4, 2013**

Pierre Youry sued Executive Transportation Company, a limousine services provider, for race discrimination. Mr. Youry's suit also asserts claims against Edward Burkhardt, a supervisor at Executive, and Joseph A. McQuillan III, a manager at Executive.[1] These Defendants jointly have filed a motion for summary judgment. For the reasons that follow, the motion is granted.

**PROCEDURAL HISTORY**

Mr. Youry filed his initial complaint in this matter on June 23, 2011. Over four months later, the Court ordered Mr. Youry to provide a status report to the Court as to why he had not then yet served a summons and complaint upon the Defendants. On November 1, 2011, one day before his status report was due, Mr. Youry filed an amended complaint, which remains the operative pleading in this matter. In this complaint, Mr. Youry alleges that he is a black male who was born in Haiti, that he began working[2] as a limousine driver for Executive in March

---

[1] Although Mr. Youry also named Joseph McQuillan, Jr., the president of Executive, as a defendant, he has since stipulated that he lacks viable claims against the elder McQuillan. *See* Docket No. 27 at 27. Accordingly, Joseph McQuillan, Jr., will be dismissed from this action.

[2] In his amended complaint, Mr. Youry appears to allege that he was an employee of Executive. *See* Docket No. 3 at ¶ 28. However, in his opposition to the instant motion Mr.

1

2006, and that Executive terminated his relationship with Executive on May 4, 2010.  The amended complaint asserts claims against all the Defendants for race discrimination in violation of 42 U.S.C. § 1981, as well as for race and national origin discrimination in violation of Pennsylvania law.

On December 21, 2011, the Defendants filed an answer to the amended complaint.  Discovery ensued, and the Defendants moved for summary judgment on December 7, 2012.  On December 28, 2012, Mr. Youry filed an opposition to the Defendants' motion.  The Court subsequently ordered the Defendants to attach the transcripts cited in their briefing as exhibits to their motion, and to include a statement of facts that complied with the Court's policies and procedures concerning summary judgment motions.  The Defendants complied with this order by filing a supplemental motion for summary judgment, leaving the Court free to resolve their motion.

**FACTUAL BACKGROUND**

Pursuant to Section II.G of its published policies and procedures, the Court requires movants for summary judgment to include a paragraph-by-paragraph recitation of facts in support of their motion.  Parties opposing such motions must state in similar form whether they contend that a movant's factual contentions are disputed, and a nonmovant's failure to do so "will lead to the Court's consideration of the moving party's factual assertion(s) as undisputed." *See* Section II.G., General Pretrial and Trial Procedures of Judge Gene E.K. Pratter.  As stated above, on January 3, 2013, the Court ordered the Defendants to file a recitation of facts in

---

Youry concedes that he was an independent contractor.  *See* Docket No. 27 at 7.  In either event, the Third Circuit Court of Appeals has held that, while an independent contractor cannot file suit under Title VII, such an individual "may bring a cause of action under section 1981 for discrimination occurring within the scope of the independent contractor relationship." *Brown v. J. Kaz, Inc.*, 581 F.3d 175, 181 (3d Cir. 2009).

accordance with its published policies, and gave Mr. Youry two weeks to confirm or deny whether the facts listed in the recitation were undisputed.  Although the Defendants complied with their obligations under this order, Mr. Youry's counsel did not.  The Court could grant the pending motion on this basis alone, but will not do so in this instance but will, instead, consider whether the evidence discussed in the parties' briefing or otherwise presented for the Court's consideration presents any genuine issues of material fact that could allow a reasonable jury to find in favor of Mr. Youry.  *See Miller v. Ind. Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988); *see also Anderson v. Wachovia Mortg. Corp.*, 621 F.3d 261, 267 (3d Cir. 2010) (noting that at the summary judgment stage, courts must draw all reasonable inferences and resolve conflicting evidence in favor of the non-moving party).  With this especially indulgent interpretation in mind, the Court sets forth the evidence adduced by the parties during discovery.

The parties agree that Mr. Youry first became an independent contractor affiliated with Executive in the summer of 2006.  Pursuant to a series of contracts, Executive leased town cars to Mr. Youry, who in turn used the cars to drive customers in exchange for fares.  On March 7, 2008, Mr. Youry entered his final contract with Executive, which remained in effect until the date of termination.

In February 2010, following the earthquake that devastated much of Haiti, Mr. Youry returned to his native homeland to visit family members who lived there.  Prior to departing for Haiti, Mr. Youry returned his car to Executive and thereby ensured that he would not have to make lease payments while he was travelling.  After returning to the United States, Mr. Youry received a new vehicle from Executive, which he drove for approximately two months prior to

his termination. Mr. Youry has testified that he did not allow anyone else to use this vehicle while it was in his possession.

According to Mr. Youry's testimony, his leased vehicle began to overheat in early May 2012. This development prompted Mr. Youry to return the vehicle to Executive, whereupon an Executive employee drove the vehicle to Johnny's Auto Repair. On May 4, 2010, John Cinque, the owner of the repair shop, telephoned Executive and informed Mr. Burkhardt that the words "F*** All 3s" were carved into the dashboard panel of Mr. Youry's vehicle.[3] That same day, Mr. Burkhardt and Mr. McQuillan III inspected the vehicle and spoke with Mr. Youry about the defacing on the dashboard. Mr. McQuillan has testified that Mr. Youry denied carving the obscenity into the dashboard, and claimed that the dashboard was already defaced at the time he received his vehicle in March 2010.[4] Mr. Burkhardt and Mr. McQuillan proceeded to immediately terminate Mr. Youry's contract with Executive. Mr. McQuillan has testified that the termination occurred because, regardless of whether Mr. Youry carved the obscenity, "he had been driving with [the obscene statement] in a visible spot for over a month where our customers could see it." Mr. McQuillan also has testified that the dashboard carving was the sole reason that Executive ended its relationship with Mr. Youry.

## SUMMARY JUDGMENT STANDARD

A court shall grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" if there is a sufficient evidentiary basis on which a reasonable jury could return a verdict for the non-moving party. *Kaucher v. Cnty. of*

---

[3] At the time of the events in question, Executive's telephone number included the digits "333-3333."

[4] In contrast, Mr. Youry has testified that he was not aware of the carving until May 4, 2010.

*Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A factual dispute is "material" if it might affect the outcome of the case under governing law. *Id.* (citing *Anderson*, 477 U.S. at 248). Under Rule 56, the Court must view the evidence presented on the motion in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255. However, "[u]nsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

      The movant bears the initial responsibility for informing the court of the basis for the motion for summary judgment and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Where the non-moving party bears the burden of proof on a particular issue, the moving party's initial burden can be met simply by "pointing out to the district court that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. After the moving party has met the initial burden, the non-moving party must set forth specific facts showing that there is a genuinely disputed factual issue for trial by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the non-moving party fails to rebut by making a factual showing "sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322.

**DISCUSSION**

**I.     Section 1981 Legal Standard**

The Third Circuit Court of Appeals has held that "both the direct evidence test introduced by *Price Waterhouse v. Hopkins* . . . and the burden-shifting framework introduced by *McDonnell Douglas Corp. v. Green* . . . may be used to determine whether an employer has discriminated against a plaintiff in violation of § 1981." *See Anderson*, 621 F.3d at 267-68.  In his amended complaint, Mr. Youry loosely alleges that the Defendants committed race discrimination in violation of 42 U.S.C. § 1981.  The Defendants appear to believe that Mr. Youry has brought a disparate treatment claim under the *McDonnell Douglas* framework rather than the *Price Waterhouse* mixed-motives framework.  *See* Docket No. 26-2 at 5.  However, Mr. Youry's opposition brief uses block quotations to regurgitate the legal standards for both these discrimination tests.  *See* Docket No. 27 at 19-20.[5]  Following these rote citations, Mr. Youry devotes the remainder of his brief to setting forth the evidence that he believes is relevant to his claims, but makes only a weak attempt to apply such evidence to actual case law.

Given the lack of clarity in Mr. Youry's briefing, it is difficult to discern whether he is basing his discrimination claim on the mixed-motives framework in addition to the *McDonnell Douglas* framework.[6]  However, Mr. Youry does invoke the principle that "[n]o affirmative or direct evidence of discrimination is required to survive summary judgment in a . . . discrimination case" at least four times in his opposition papers.  *See* Docket No. 27 at 18, 22-24.  Moreover, Mr. Youry describes the favorable evidence identified in his briefing as "indirect

---

[5] Mr. Youry does not mention in even the most remote fashion the standard for bringing a hostile work environment claim under § 1981.

[6] The Court can glean that Mr. Youry is relying on *McDonnell Douglas* because he concludes his legal argument by contending that Executive's reason for terminating his contract was "pretextual."  *See* Docket No. 27 at 25-26.

evidence of discrimination." *See* Docket No. 27 at 23-24. Such statements impliedly concede that Mr. Youry lacks direct evidence of discrimination, a concession that bars Mr. Youry from proceeding with a mixed-motives claim under § 1981. *See Brown*, 581 F.3d at 183 (holding that a plaintiff "must first present 'direct evidence of discrimination'" to bring a § 1981 mixed-motives claim) (quoting *Fakete v. Aetna, Inc.*, 308 F.3d 335, 338 (3d Cir. 2002)). Finally, the only employment discrimination case cited by Mr. Youry in the legal argument section of his brief is *Fasold v. Justice*, 409 F.3d 178 (3d Cir. 2005), a case decided under the *McDonnell Douglas* theory rather than a mixed-motives theory. *See id.* at 184. Therefore, the Court will only analyze Mr. Youry's race discrimination claim under the *McDonnell Douglas* standard. *Cf. Econ. Folding Box Corp. v. Anchor Frozen Foods Corp.*, 515 F.3d 718, 721 (7th Cir. 2008) ("It is not the court's responsibility to research the law and construct the parties' arguments for them."); *Crock v. Univ. of Pittsburgh*, No. 09-851, 2010 U.S. Dist. LEXIS 24900, at *2-3 n.2 (W.D. Pa. Feb. 16, 2010) (noting same).

Under *McDonnell Douglas*, a plaintiff may establish a *prima facie* discrimination claim by showing that (1) she belongs to a protected class; (2) she was qualified for a position; (3) she was subject to an adverse employment action; and (4) the adverse action occurred under circumstances that raise an inference of discriminatory action. *See Sarullo v. United States Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003). If a plaintiff establishes a *prima facie* case, the defendant must "articulate some legitimate, nondiscriminatory reason for the adverse employment action." *Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 370 (3d Cir. 2008). The plaintiff then has the burden of showing that the defendant's proffered reasons for the adverse action are pretextual. At the summary judgment stage, the plaintiff must meet this burden by

submitting "evidence which (1) casts doubt upon the legitimate reason proffered by the employer such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the employee's termination." *See id.* Finally, in deciding a dispositive motion under the *McDonnell Douglas* framework, the Court recognizes that "evidence supporting the *prima facie* case is often helpful in the pretext stage, and nothing about the *McDonnell Douglas* formula requires [the Court] to ration the evidence between one stage or the other." *See id*.

## II.     Prima Facie Case

In their briefing, the Defendants argue that Mr. Youry cannot make out a "prima fascia [sic] case of discrimination." *See* Docket No. 33-1 at 8. Because Mr. Youry is black, served as a contractor for several years, and had his contract terminated, the Defendants presumably are arguing that Mr. Youry fails to satisfy the fourth prong of the prima facie test because he cannot demonstrate that his termination occurred under circumstances raising an inference of discrimination. In response, Mr. Youry makes three arguments as to why a reasonable jury could find that he has established a prima facie case.

Mr. Youry first argues that his termination raises an inference of discrimination because a jury could disbelieve the Defendants' testimony about how Executive assigned vehicles and jobs to its contractors. *See* Docket No. 27 at 21-22. Under *McDonnell Douglas*, a plaintiff must produce actual evidence to satisfy his "initial burden of establishing a prima facie case." *See Sarullo*, 352 F.3d at 797. Mr. Youry's first argument does not attempt to identify favorable record evidence, but instead consists of attacking evidence that is favorable to the Defendants.

8

Stated otherwise, his position is nothing more than unsupported speculation.  The Court finds that Mr. Youry cannot establish a prima facie case on this basis.  *See Stanziale v. Jargowsky*, 200 F.3d 101, 105 (3d Cir. 2000) ("A plaintiff must first *produce evidence* sufficient to convince a reasonable factfinder as to all of the elements of a prima facie case of discrimination.") (emphasis added).

      Second, Mr. Youry appears to contend that he can establish a prima facie case because Executive assigned better jobs to white drivers than to him.  The Third Circuit Court of Appeals has held that "[t]o make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class for purposes of a Title VII claim, the plaintiff must show that he and the employee are similarly situated in *all* relevant respects."  *Houston v. Easton Area Sch. Dist.*, 355 F. App'x 651, 654 (3d Cir. 2009) (emphasis added).  Here, Mr. Youry vaguely testified that Executive provided better jobs to a "white driver with a pony tail," a Frenchman named Victor, and other unidentified individuals, but Mr. Youry has not produced sufficient information about these individuals to support a conclusion that they were similarly situated to him. *See* Docket No. 27 at 22-23.  Therefore, the Court finds that Mr. Youry cannot establish a prima facie case based on a "similarly situated" analysis.  *See Warfield v. SEPTA*, 460 F. App'x 127, 130 (3d Cir. 2012) (holding that a plaintiff failed to establish a prima facie case because her proposed comparator was not similarly situated to her); *Red v. Potter*, 211 F. App'x 82, 84 (3d Cir. 2006) (holding that a plaintiff "failed to make out a prima facie case of discrimination" because she "failed to show that [ostensible comparators] were similarly situated"); *Greaves v. Shinseki*, No. 11-6270, 2013 U.S. Dist. LEXIS 100935, at *27, 29 (E.D. Pa. July 18, 2013) (holding that plaintiff failed to establish a prima facie case because "[w]ithout further

information as to whether [the proposed comparators] met the educational and 'performance dimensions' requirements for [a position], the Court cannot determine whether these employees are similarly situated to [the plaintiff]").

Third, Mr. Youry argues that he can establish a prima facie case because he testified that the Defendants subjected him to racially charged language. Some of the language discussed by Mr. Youry fails to support his argument.[7] However, Mr. Youry has testified that Mr. McQuillan told him that "I never liked you black Haitians" about two months before Mr. Youry's contract was terminated. Mr. Youry also testified that Mr. McQuillan called him a "black bastard" as he ended Mr. Youry's contract with Executive, and referred to Mr. Youry as a "black mother*****" immediately after the termination.

In considering whether the racially charged remarks of managers or co-workers raise an inference of discrimination, a court should look to "(1) the relationship of the speaker to the employee and within the corporate hierarchy; (2) the temporal proximity of the statement to the adverse employment decision; and (3) the purpose and content of the statement." *See Parker v. Verizon Pa., Inc.*, 309 F. App'x 551, 558-59 (3d Cir. 2009) (citing *Ryder v. Westinghouse Elec. Corp.*, 128 F.3d 128, 133 (3d Cir. 1997). Here, Mr. McQuillan was a manager of Executive who testified during his deposition that he participated in the decision to terminate Mr. Youry's contract. Additionally, Mr. McQuillan made two of his alleged racial statements during the termination process. The Court thus finds that, based on Mr. McQuillan's alleged statements, a reasonable jury could conclude that Executive terminated Mr. Youry's contract under circumstances that raise an inference of discriminatory action. *See Antol v. Perry*, 82 F.3d 1291,

---

[7] For instance, Mr. Youry has testified that he and other black drivers were subjected to cursing, but fails to identify any evidence showing that black drivers faced abusive language more frequently or more intensely than other drivers.

1301 (3d Cir. 1996) (holding that evidence that a decisionmaker's supervisor used offensive language supported an inference of discrimination).

### III.     Employer Explanation and Pretext

Because Mr. Youry has set forth a prima facie case, based upon the language described immediately above, the Defendants must "articulate some legitimate, nondiscriminatory reason" for terminating his contract. *C.A.R.S.*, 527 F.3d at 370. Here, the Defendants have met this burden by stating that the termination occurred because Mr. Youry drove customers in a vehicle displaying a visible obscenity. Therefore, Mr. Youry must show that the Defendants' proffered reason for the termination was pretextual by submitting "evidence which (1) casts doubt upon the legitimate reason proffered by [Executive] such that a fact-finder could reasonably conclude that the reason was a fabrication; or (2) would allow the fact-finder to infer that discrimination was more likely than not a motivating or determinative cause of the . . . termination." *See id.*

Although Mr. Youry could attempt to show pretext by marshaling evidence to support his prima facie case, *see id.*, he has opted to not do so. Instead, in a two-page section on pretext in his briefing that fails to cite any case law, Mr. Youry notes that the Defendants could not identify any other drivers whose vehicles contained graffiti detrimental to Executive's image, or who had their contracts terminated because of such graffiti. *See* Docket No. 27 at 25. He then rhetorically asks "why would Defendants . . . make an exception for the Plaintiff and make him the *first* driver to be terminated for having graffiti in his vehicle? No other drivers had been discharged for that reason; why Mr. Youry?" *See id.* at 26 (emphasis in original).

At this stage of the litigation, Mr. Youry must produce evidence, not merely a rhetorical device, that could support a jury finding of pretext. He cannot merely rely on a lack of evidence

11

that Executive terminated another driver for committing a similar offense.[8] While Mr. Youry could have conceivably survived summary judgment by showing that Executive did not terminate the contract of a white driver whose vehicle contained graffiti, if there was such evidence, he cannot do so simply because he was the first driver discovered with such inflammatory graffiti.

**CONCLUSION**

For the foregoing reasons, the Court will grant the Defendants' motion for summary judgment.[9] An appropriate order follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

---

[8] In *Parsia v. Allied Tube & Conduit Corp.*, No. 07-2436, 2009 U.S. Dist. LEXIS 23392 (E.D. Pa. Mar. 18, 2009), the plaintiff tried to demonstrate pretext by noting that "[the defendant] admitted that prior to [the plaintiff], no other . . . employees had been discharged for alleged physical assault." *See id.* at *26. The court rejected this argument and held that a "plaintiff cannot demonstrate pretext by pointing to an absence of evidence produced by [a] defendant." *See id.* The Court agrees with the reasoning of *Parsia*.

[9] The Court declines to exercise supplemental jurisdiction over Mr. Youry's state law claims.